Date: Wed May 28 06:00:11 CDT 2025
From: Amber Cronican <Amber.Cronican@lfg.com>
To: AGGIE@MARCWHITEHEAD.COM
Message-ID: <403388441.3.1748430011703@ne1pldb201c.lnc.com>
Subject:Lincoln Financial Group Information for Claim 1210046281 (SECURE)

E-communication from Lincoln Financial Group

## Important Information for Claim #1210046281

Please review the attached letter and/or document(s) regarding the Claim #1210046281 for Michael Morgason. You may submit claim forms and additional documentation via email to DisabilityClaims@LFG.com. If you have any questions regarding this information, please contact us at claims@lfg.com or 1-800-423-2765.

**Amber Cronican**
**Specialist, Appeals Claims**
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114
Toll Free Phone: 1-800-423-2765
Phone: 1800 423 2765 *66735
Fax: 402 361 1460
Email: Amber.Cronican@lfg.com

Insurance products are issued by the insurance company affiliates of Lincoln Financial Group: The Lincoln National Life Insurance Company and Lincoln Life & Annuity Company of New York. The Lincoln National Life Insurance Company is not authorized in the state of New York. Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

©2013 Lincoln National Corporation

LincolnFinancial.com

EXHIBIT
2

Lincoln Financial Group

Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

May 27, 2025

MARC WHITEHEAD & ASSOCIATES
ATTN MARC WHITEHEAD
403 HEIGHTS BLVD
HOUSTON, TX 77007

Re: Policyholder: Texarkana Independent School District
Policy Number: 00001025317200000
Claim Number: 1210046281
Claimant: Michael Morgason

Dear MARC WHITEHEAD:

We have completed our review of your client's Long Term Disability appeal. Based on the information provided, we have determined that we are unable to approve benefits beyond 05/19/2024. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To receive benefits under the policy issued to Texarkana Independent School District, an individual must satisfy all of the provisions of the policy. This includes, but is not limited to, the following:

> **BENEFIT.** The Company will pay a Total Disability Monthly Benefit to an Insured Employee, after the completion of the Elimination Period, if he or she:
> 1. is Totally Disabled;
> 2. becomes Disabled while insured for this benefit;
> 3. is under the Regular Care of a Physician; and
> 4. at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.
>
> The Total Disability Monthly Benefit will cease on the earliest of:
> 1. the date the Insured Employee ceases to be Totally Disabled or dies;
> 2. the date the Maximum Benefit Period ends; or
> 3. the date the Insured Employee is able, but chooses not to engage in Partial Disability Employment:

©2025 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

a. in his or her Own Occupation, during the Own Occupation Period; or
b. in any occupation, after the Own Occupation Period.

Proportional benefits will be paid for a partial month of Total Disability.

At the Company's option, Total Disability Monthly Benefit payments may also be denied or suspended on any of the following dates:

1. the date the Insured Employee (without good cause):
   a. fails to take a required medical exam;
   b. fails to cooperate with the examiner; or
   c. postpones a required exam more than twice;
2. the 45th day after the Company mails a request for additional proof, if not given; or
3. the 45th day after the Company mails a request for proof of the Insured Employee's application for any Other Income Benefits to which he or she may be entitled, if not given.

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:

1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

The policy has a 36 month Own Occupation Period which ended on 05/19/2024. In order to be considered Totally Disabled beyond this date, the medical documentation must support your client’s inability to perform each of the main duties of any occupation for which your client is qualified. As such, in considering whether your client qualifies for Long Term Disability benefits beyond 05/19/2024, we evaluated whether your client would be restricted or limited from performing the main duties of any occupation for which your client is qualified.

Your client's entire file was reviewed upon appeal. Disability must be supported from 05/19/2024 forward, which was the focus of our determination.

**<u>Summary of Initial Claim Filing</u>**

As you know your client's claim was originally approved from 05/19/2021 to 05/19/2024 as we found your client met the definition of Total Disability that applied during this period. Benefits were terminated as of 05/19/2024, because we determined your client was not Totally Disabled from performing the main duties of any occupation. Our evaluation included review of the medical documentation including consultation with and/or review of a written report by an independent physician who is Board Certified in Physical Medicine and Rehabilitation.

For complete details please refer to our letter dated 02/22/2024.

**Summary of First Level of Appeal**

On 05/23/2024, your client filed an appeal in response to our determination to terminate benefits. Our review of the medical documentation which included consultation with and/or review of a written report an independent physician who is Board Certified in Neurology and pain management did not support restrictions and limitations that would render your client unable to perform the main duties of any gainful occupation beyond 05/19/2024.

For complete details please refer to our letter dated 07/10/2024.

**Summary of Second Level of Appeal**

On 12/26/2024, your client filed a second and final appeal in response to our determination to uphold our previous decision to terminate benefits. Additional information was submitted with your client's appeal, including 12 exhibits.

As part of our appeal review, your claim file was reviewed by a health care consultant, who noted in part:

01/27/2025 Amy M RN CCM

> "The medical records document multiple orthopedic and neurological conditions including carpal tunnel syndrome and intra-sacral meningeal cysts requiring surgical intervention and intermittent steroid injections as noted above. Additional treatment includes medication management with muscle relaxers, nerve pain medicine, and narcotics. Most recently the employee underwent sacral laminar reconstruction with resorbable plating for treatment of intra-sacral meningeal cysts on April 10, 2024, without any documented complications. The employee is treated by Dr. Feigenbaum (Neurosurgery), Dr. Nix (Family Medicine), and Dr. Frederick (Orthopedic Surgery) as noted above. During initial post-operative follow up appointment on April 15, 2024, with Dr. Feigenbaum, the employee is doing well, and he reports his symptoms have improved. Exam reveals full strength and equal sensation. There is a gap in treatment from April 10, 2024-June 10, 2024, at which time the employee saw Dr. Nix for medication management of narcotics which he is being weaned off. His gabapentin is restarted. During follow up appointment on August 21, 2024, with Dr. Frederick (Orthopedic Surgery), the employee reports complete resolution of left sided carpal tunnel with last steroid injection (more than a year ago), however symptoms have gradually returned. Exam reveals good range of motion and mild compression tests. Treatment consists of a repeat steroid injection. There appears to be a gap in treatment from August 21, 2024-December 9, 2024, at which time the employee was evaluated by a new orthopedist Weaver PA, for persistent right hip pain. He no longer requires narcotic pain medication. Exam reveals tenderness and pain with range of motion (internal rotation) and no motor or sensory deficits. He is noted to have an antalgic gait. Diagnostic imaging showed mild osteoarthritis with recommendation for total hip replacement. While the employee reports chronic pain, in multiple sites, the medical exam documentation fails to demonstrate severe pain, instability, weakness including loss of grip strength, altered sensation, or significant loss of range of motion to support restrictions/limitations precluding all work activities beyond May 19, 2024. An MRI July 25, 2024, showed no recurrent or residual cysts. It would be reasonable to periodically adjust positions throughout the workday per position of comfort. i.e. taking reasonable breaks, stretching, alternating positions throughout the day to

minimize or mitigate pain and discomfort. While it is reasonable to seek continuation of conservative care with intermittent injections, this would not necessitate the need for ongoing restrictions/limitations and can be done around a work schedule.

There is self-reported cognitive (concentration, memory) impairment, however there is no neuropsychological testing to support these claims, and no examination documenting cognitive slowing or other observable issues.

The medical records document the employee will be having a total hip arthroplasty therefore it is reasonable to support no work to allow recovery per MD Guidelines if appropriate."

02/05/2025 we attempted to send your client for an IME, however our venders were unable to locate a physician within range/distance. Therefore, we moved forward with a full file review by a board-certified physician.

02/24/2025 Howard Grattan MD PM&R

"The claimant's postoperative recovery following laminectomy for Tarlov cyst resection on 04/10/2024 and the claimant's right hip pain and candidacy for total hip replacement would support the need for restrictions and limitations.

From a Physical Medicine and Rehabilitation/Pain Management perspective, restrictions from 05/19/2024 and forward are as follows:

Lifting and carrying: 20 pounds occasionally (up to 33% of the time) and 10 pounds frequently (33-66% of the time)
Pushing and pulling: 20 pounds occasionally (up to 33% of the time) and 10 pounds frequently (33-66% of the time)
Sitting: 60 minutes at a time up to 6 hours per workday with the ability for self-positional change as necessary or comfort
Standing: 10 minutes at a time up to 2 hours per day
Walking: 10 minutes at a time up to 2 hours per day
Walking on uneven ground: Never
Climbing Ladders: Never
Operating Heavy Equipment: Never
Balancing: Never
Crawling: Never
Bending at waist: occasionally (up to 33% of the time)
Stooping: occasionally (up to 33% of the time)
Kneeling: occasionally (up to 33% of the time)
Crouching: occasionally (up to 33% of the time)
Climbing Regular Stairs: occasionally (up to 33% of the time)
Reaching Overhead: Unrestricted
Reaching Desk Level: Unrestricted
Reaching Below Waist: occasionally (up to 33% of the time) bilaterally
Handle, Finger, and Feel: Unrestricted
Simple/Firm grasping: Unrestricted.
Operate foot controls: Unrestricted.
No additional activity restrictions are supported.

A reevaluation or reassessment of the claimant's current level of functioning would be appropriate within six months from the date of this report in order to determine if there has been any improvement in symptomology."

On 03/032025, a copy of our medical review was sent to you allowing time to provide a copy to your clients treating physicians for further review and respond with any additional information. As of the date of this letter, we received Exhibits A13-A17.

As part of our review these items were referred to the reviewing physician to complete an addendum review. The physician noted in part:

04/07/2025 Howard Grattan MD PM&R- addendum

"The additional information provided does not change my opinion on the restrictions listed in my original report from 05/19/24 through 02/12/25. There are no new medical records provided during those dates.

However, as the additional records include an operative report and postoperative x-ray of the right hip indicating that the claimant underwent right total hip arthroplasty on 02/13/25, the claimant would be restricted to activities of daily living only from 02/13/25 through approximately 05/13/25 to allow for post-operative recovery. Reassessment would be appropriate at that time."

On 04/11/2025, a copy of our medical review was sent to you allowing time to provide a copy to your clients treating physicians for further review and respond with any additional information. As of the date of this letter, we received a 30-day extension request, which was granted. We then received Ortho notes from Bowen Hefley dated 04/07/2025 and 04/15/2025, an MRI of lumbar spine w/o contrast dated 04/15/2025 and a response/rebuttal letter from your office dated 04/25/2025.

**<u>Second Level Appeal Decision</u>**

We understand Mr. Morgason stopped working on 11/20/2020 due to right carpal tunnel syndrome, right thumb arthritis and generalized fatigue associated mainly with the lower extremities. Throughout his time out on claim he has treated with several providers and has had several treatments/procedures for his disabling conditions. Mr. Morgason has a history for trapezium resection, interposition arthroplasty, and ligament reconstruction at the right thumb and right carpal tunnel release on 04/22/21. He is also status post laminectomy for resection of small Tarlov cysts at S2 and S3 on 04/10/24. The records show that Mr. Morgason showed significant improvement following these procedures with no complications. The medical review that was completed at the 2nd level of appeal found that even after successful treatment for his conditions that he would still require some restrictions and limitations falling within the sedentary to light category. These R&L’s would preclude him from performing his own heavy occupation, thus benefits were paid to his change of definition, however would not support from performing any occupation which is the timeframe in question.

Most recently, he underwent right total hip arthroplasty on 02/13/25. While we recognize that your client would require a recovery period following his right hip surgery performed 02/13/2025. However, the information in his file does not support evidence of permanent incapacity from performing any occupation from his date last paid 05/19/2024 to his surgery

date 02/13/2025. Just because a claimant has an upcoming appointment/treatment/procedure does not mean they automatically qualify for benefits. In order to receive benefits medical support for total disability must continuously be met throughout the life of the claim. Unfortunately, the medical reviews conducted on his claim do not support total disability per the policy provisions from 05/19/2024 to his surgery date of 02/13/2025. Therefore, benefits are not payable for the time leading up to his surgery OR for his surgery recovery time.

In addition, we did review and consider the most recent items you submitted following the 04/11/2025 right to review and respond letter. The items your office submitted included April 2025 office/treatment notes, an MRI, and a rebuttal letter expressing your disagreement with our medical review. Unfortunately, these additional items did not provide any information that would alter our previous review. We have already acknowledged that Mr. Morgason had a hip procedure and that even though we understand this occurred it still would not have precluded him from performing a sedentary occupation leading up to the surgery. In addition, the MRI submitted for his back was consistent with the prior medical records already received and reviewed, overall continuing to show mild multilevel degenerative disc disease. Again, we understand Mr. Mogason's conditions would not allow him to work in his previous occupation however the records continuously support progress with treatments/procedures ultimately allowing for him to return to the workforce full time in at least a sedentary capacity beyond his own occupation timeframe (change of definition date) 05/19/2024 forward.

As highlighted previously, the occupations of Lens Inserter and Ampoule Examiner would allow an employee the opportunity receive on the job training much like many if not all entry-level positions do. This would allow someone with limited direct experience in an occupation the opportunity to learn specific job tasks from the employer, which would then be utilized on the job. This practice is incredibly common in today’s workforce as people are branching out and taking advantage of opportunities where they can expand on their existing skill set and further evolve their careers. This is the very concept of transferability; taking skills and abilities gleaned from a combination of work experiences to identify alternate opportunities where those skills can be best utilized in a different capacity. To say that someone is incapable of performing in an occupation they have not worked directly in goes against the very concept of a Transferable Skills Analysis.

Overall, Mr. Morgason does not continuously meet the policy definition of total disability beyond 05/19/2024 and therefore the previous decision to deny benefits beyond 05/19/2024 remains the same and his claim file is now being closed.

It is our opinion that we have completed a full and fair review with regards to Mr. Morgason's submitted disability claim to include meeting all policy provisions and applicable regulatory guidelines as it relates to adjudication practices. We have utilized medical consultants with all our claim determinations and have completed all allowable administrative appeal levels. In addition to these levels of review, we have also allowed an additional courtesy review with a board-certified physician. All reviews continue to disagree with Mr. Morgason's physician(s) opinion of disability. Mr. Morgason does have litigation rights available should he continue to disagree with our determinations, and this may be his next course of action should he wish to utilize.

**Vocational**

We reviewed your client's past training, education, and work experience to evaluate your client's capacity to perform work-related activity. The documentation provided suggests your client is not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that your client would be capable of performing the following occupations:

**<u>DOT Code Occupation Str Monthly Wage</u>**
713.687-026 Lens Inserter S $2,957.07
559.687-010 Ampoule Examiner S $3,659.07

The preceding list is just a sample of various jobs that your client shows transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The occupations listed are found to exist within the national economy and are appropriate from the standpoint of adequate salary levels relative to your client's prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exist within the national labor market.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

You and your client have exhausted all rights of appeal, and your client's administrative file is now closed.

The employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is 02/22/2027.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.
Sincerely,

Amber C
1800 423 2765 *66735
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló. Kojį' hódíílnih áǫįóóǫéąą́ǫąíę́ę.